UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Case No.

IOLANDA RODRIGUEZ,

                    Plaintiff,

      - against -                                    **COMPLAINT**

JACARANDA CLUB, LLC d/b/a SAPPHIRE NEW YORK,
JACARANDA HOLDINGS, LLC, SAPPHIRE NY, LLC, and
CLUB AT 60TH ST., INC.,

                    Defendants.
------------------------------------------------------------------------X

      Plaintiff IOLANDA RODRIGUEZ, by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff brings this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for **failure to pay minimum wage and for making unlawful deductions**, and seeks to recover unpaid wages, remuneration of such deductions made unlawfully, additional amounts as liquidated damages, and reasonable attorneys' fees and costs.

2. Plaintiff also complains pursuant to the Wage Theft Prevention Act, New York Labor Law § 195 *et seq.* and seeks to redress the damages she has suffered as a result of Defendants' **failure to give her written notice of wage rates**, including, inter alia, her regular rate of pay and how she was to be paid.

### JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under § 216(b) of the FLSA (29 U.S.C. § 216 (b)), §§

1331 and 1343.

4. The Court has supplemental jurisdiction over the plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

6. At all times relevant, Plaintiff IOLANDA RODRIGUEZ ("Plaintiff") was and is a resident of the State of New York and the County of Richmond.

7. At all times relevant, Defendant JACARANDA CLUB, LLC d/b/a SAPPHIRE NEW YORK ("JACARANDA CLUB") was and is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 333 East 60th Street, New York, NY 10022.

8. At all times relevant, Defendant JACARANDA HOLDINGS, LLC ("JACARANDA HOLDINGS") was and is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York. Upon information and belief, Defendant JACARANDA HOLDINGS' principal executive office is located at 1803 Pontius Avenue, Los Angeles, California 90025.

9. At all times relevant, Defendant SAPPHIRE NY, LLC ("SAPPHIRE NY") was and is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York.

10. At all times relevant, Defendant CLUB AT 60TH ST., INC. ("CLUB 60") was and is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York. Upon information and belief, Defendant CLUB 60's principal

executive office is located at 1803 Pontius Avenue, Los Angeles, California 90025.

11. Defendants JACARANDA CLUB, JACARANDA HOLDINGS, SAPPHIRE NY, and CLUB 60 shall be referred to herein, collectively, as "Defendants."

12. At all times relevant, Defendants, individually, and collectively, have maintained control, oversight, and direction over Plaintiff including, timekeeping, scheduling, payroll, and other employment practices. Further, each defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

13. At all times relevant, Defendants, individually, and collectively, owned, operated, controlled, and/or maintained a gentlemen's club (i.e., a strip club) named "Sapphire" located at 333 East 60th Street, New York, NY 10022 ("the club").

14. At all times relevant, Plaintiff was employed by Defendants as an entertainer at the club.

15. The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee and an employee is anyone who is suffered or permitted to work. As a result, Defendants are individually, and collectively, liable as an "employers" under the FLSA.

16. Upon information and belief, Defendants each grossed more than $500,000.00 in the past fiscal year.

## MATERIAL FACTS

17. In 2000, Plaintiff began working for Defendants at the club as an exotic dancer.

18. Throughout the entirety of Plaintiff's employment at the club, Defendants failed to pay Plaintiff (as well as their other exotic dancer entertainers) the statutory minimum wage. Also, Defendants improperly and unlawfully collected from Plaintiff (and others) "house

fees," "house Mom fees," "dee-jay fees," "hairdressing fees," and "host fees" from the tips collected by Plaintiff each and every shift she worked. Additionally, Defendants encouraged customers to tip entertainers using club scrip, which customers purchase from the club to use instead of cash. When an entertainer received a tip from a customer in club scrip, Defendants deducted and retained a portion of that tip when the entertainer later exchanged the club scrip for cash (usually around 15 percent). Consequently, customers who believed they were tipping entertainers a certain amount were actually tipping them less. Further, Defendants improperly designated Plaintiff (and entertainers) as independent contractors in an attempt to avoid having to abide by the federal and state wage laws and regulations.

19. Insofar as is relevant, in or around September 2011, Plaintiff worked at the club an average of five nights per week, and worked eight hours per shift, for a total of approximately 40 hours per week. Plaintiff clocked in and clocked out each shift that she worked. Plaintiff ceased working for Defendants around the end of September 2014.

20. Throughout the entirety of her employment, she never received any wages from Defendants, and rather, "was paid" by Defendants by allowing her to keep a certain portion of tips given to her by customers (to be discussed below).

21. From July 24, 2009 to December 31, 2013, the New York State Minimum Wage was $7.25 per hour. From December 31, 2013 to December 31, 2014, the New York State Minimum Wage was $8.00 per hour.

22. From approximately September 1, 2011 to approximately December 31, 2013, which is a period of approximately 122 weeks ("the 122-week period"), Plaintiff worked at the club approximately 40 hours per week each and every week.

4

23. During the 122-week period, Defendants failed to pay Plaintiff any money in wages. Thus, Plaintiff is owed $7.25 for each and every hour worked during the 122-week period.

24. Accordingly, during the 122-week period, <u>Defendants failed to pay Plaintiff $35,380.00</u> for all hours worked (122 wks. x $7.25/hr. x 40 hrs./wk.= $35,380.00).

25. From approximately January 1, 2014 to approximately September 30, 2014, which is a period of approximately 39 weeks ("the 39-week period"), Plaintiff worked at the club approximately 40 hours per week each and every week.

26. During the 39-week period, Defendants failed to pay Plaintiff any money in wages. Thus, Plaintiff is owed $8.00 for each and every hour worked during the 39-week period.

27. Accordingly, during the 39-week period, <u>Defendants failed to pay Plaintiff $12,480.00</u> for all hours worked (39 wks. x $8.00/hr. x 40 hrs./wk.= $12,480.00).

28. Furthermore, throughout the entirety of Plaintiff's employment at the club, Defendants maintained a policy whereby Plaintiff (and the other entertainers) were compelled to pay certain fees (i.e., Defendants took certain deductions) from tips earned by Plaintiff in order to work at the club.

29. One such fee that Defendants mandated Plaintiff to pay what it referred to as a "house fee." Specifically, Plaintiff (and other entertainers) were scheduled to start work at a particular time each evening. However, for every hour beyond the scheduled time Plaintiff was required to start work that she arrived, she had to pay a certain amount to management out of her tips.

30. Notably, on Mondays and Tuesdays, if Plaintiff showed up at 8:00 PM, she had to pay $80.00 and it went up $20.00 every hour thereafter. On Wednesdays through Saturdays,

it was $100.00 and went up $20.00 for every hour thereafter. Thus, Plaintiff was required to pay a "house fee" of approximately $120.00-$140.00 each and every night she worked (i.e., an average of $130.00).

31. As such, Plaintiff worked an average of five nights per week each and every week she worked for Defendants at the club. Insofar as is pertinent, Plaintiff worked approximately 805 nights during the 161 weeks from September 1, 2011 to September 30, 2014 (161 weeks x 5 nights/wk. = 805 nights). <u>Thus, Plaintiff is owed $104,650.00</u> (805 nights x $130.00/night = $104,650.00) for the money unlawfully deducted from her tips by Defendants.

32. Another such fee that Defendants mandated Plaintiff to pay what it referred to as a "house mom fee." Specifically, Plaintiff (and other entertainers) were instructed to report to what is referred to in the industry as a "house mom." A "house mom" is essentially a member of management who, inter alia, collects the "house fees"; maintains order in the dressing room and ensures all entertainers have their "costumes"; helps with issues such as makeup, clothing problems (ripped costumes, broken shoes, etc.), and cuts and scrapes; ensures the entertainers have snacks and water; and, encourages and talks about any issues the entertainers may have (when necessary).

33. For the services of the "house mom," Plaintiff (and others) was required to pay a "house mom fee" of approximately $20.00 from her tips each and every night she worked.

34. As such, Plaintiff worked an average of five nights per week each and every week she worked for Defendants at the club. Insofar as is pertinent, Plaintiff worked approximately 805 nights during the 161 weeks from September 1, 2011 to September 30, 2014 (161 weeks x 5 nights/wk. = 805 nights). <u>Thus, Plaintiff is owed $16,100.00</u> (805 nights x

6

$20.00/night = $16,100.00) for the money unlawfully deducted from her tips by Defendants.

35. Another such fee that Defendants mandated Plaintiff to pay what it referred to as a "dee-jay fee." By way of background, the dee-jay at a gentlemen's club is the individual who plays the music for entertainers to dance to. The dee-jay is also in charge of who gets called to dance on the main stage(s) (as well as when, and the frequency of same). However, generally speaking, entertainers make the bulk of their tips by performing private dances as opposed to performing on the main stage(s). As such, the dee-jay has a considerable amount of influence over how much money an entertainer can make per shift. Defendants mandated the entertainers to pay the dee-jay for these services.

36. For the services of the dee-jay, Plaintiff (and others) was required to pay a "dee-jay fee" of approximately $60.00 from her tips each and every night she worked.

37. As such, Plaintiff worked an average of five nights per week each and every week she worked for Defendants at the club. Insofar as is pertinent, Plaintiff worked approximately 805 nights during the 161 weeks from September 1, 2011 to September 30, 2014 (161 weeks x 5 nights/wk. = 805 nights). <u>Thus, Plaintiff is owed $48,300.00</u> (805 nights x $60.00/night = $48,300.00) for the money unlawfully deducted from her tips by Defendants.

38. Another such fee that Defendants mandated Plaintiff to pay was what it referred to as a "hairdressing fee." By way of background, a hairdresser was employed by Defendants to style hair in order to change or maintain an entertainer's image. Defendants compelled Plaintiff to pay for the hairdresser's services regardless of whether she actually utilized his or her services.

7

39. For the services of the hairdresser, Plaintiff (and others) was required to pay a "hairdressing fee" of approximately $20.00 from her tips each and every night she worked.

40. As such, Plaintiff worked an average of five nights per week each and every week she worked for Defendants at the club. Insofar as is pertinent, Plaintiff worked approximately 805 nights during the 161 weeks from September 1, 2011 to September 30, 2014 (161 weeks x 5 nights/wk. = 805 nights). <u>Thus, Plaintiff is owed $16,100.00</u> (805 nights x $20.00/night = $16,100.00) for the money unlawfully deducted from her tips by Defendants.

41. Another such fee that Defendants mandated Plaintiff to pay was a percentage of any money obtained by the entertainer via the use of club scrip (or "funny money" as it was/is commonly referred to). By way of background, Defendants provided (and, upon information and belief, still do provide) customers with the opportunity to purchase club scrip. A customer purchasing club scrip is, in essence, a currency exchange whereby the customer purchases dollar-for-dollar currency (referred to as "funny money") for use at the club. Customers then used club scrip for, amongst other things, paying for entertainment, including private dances from the entertainers (Plaintiff included).

42. At the end of the evening, Plaintiff (and others) exchanged all club scrip received for cash. Nevertheless, Defendants took an off-the-top percentage of all club scrip exchanged by Plaintiff in the amount of approximately 15 percent. On an average night, Plaintiff earned approximately $2,000.00 in club scrip, of which the club took $300.00.

43. As such, Plaintiff worked an average of five nights per week each and every week she worked for Defendants at the club. Insofar as is pertinent, Plaintiff worked approximately

805 nights during the 161 weeks from September 1, 2011 to September 30, 2014 (161 weeks x 5 nights/wk. = 805 nights). <u>Thus, Plaintiff is owed $241,500.00</u> (805 nights x $300.00/night = $241,500.00) for the money unlawfully deducted from her tips by Defendants.

44. Another such fee that Defendants mandated Plaintiff to pay what it referred to as a "host fee." By way of background, there were (and upon information and belief, still are) individuals who work for Defendants who serve as hosts at the club. These individuals are there to keep customers happy, ensure that order is generally kept at the club, as well as recommend dancers to large groups or to facilitate larger events such as bachelor parties.

45. For the services of the hosts, Plaintiff (and others) was required to pay a "host fee" of approximately $200.00 from her tips each and every night she worked.

46. As such, Plaintiff worked an average of five nights per week each and every week she worked for Defendants at the club. Insofar as is pertinent, Plaintiff worked approximately 805 nights during the 161 weeks from September 1, 2011 to September 30, 2014 (161 weeks x 5 nights/wk. = 805 nights). <u>Thus, Plaintiff is owed $161,000.00</u> (805 nights x $200.00/night = $161,000.00) for the money unlawfully deducted from her tips by Defendants.

47. **Accordingly, based on the foregoing, <u>Defendants owe Plaintiff $635,510.00</u> ($35,380.00 + $12,480.00 + $104,650.00 + $16,100.00 + $48,300.00 + $16,100.00 + $241,500.00 + $161,000.00) in unpaid wages and from making unlawful deductions.**

48. Furthermore, following the enactment of the Wage Theft Prevention Act, Defendants did not provide Plaintiff with any sort of written notice regarding: her regular rate of pay,

9

overtime rate of pay, how she was to be paid, her "regular payday," the official name of the employer and any other names used for business, nor the address and phone number of the employer's main office or principal location.

49. **Because Defendants failed to give Plaintiff proper notice pursuant to the Wage Theft Prevention Act throughout the entirety of her employment with them, she is entitled to the statutory maximum of $5,000.00 in damages.**

50. Defendants' failure to pay Plaintiff her proper earned wages required by law was willful. Furthermore, Defendants' failure to give Plaintiff proper notice pursuant to the Wage Theft Prevention Act was also willful.

51. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Liquidated and Punitive Damages.

### AS A FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### FAILURE TO PAY MINIMUM WAGE

52. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

53. Defendants willfully employed Plaintiff in the aforementioned enterprise and failed to compensate Plaintiff at the required minimum hourly rate during certain periods of her employment.

54. Defendants' failure to pay Plaintiff the mandated minimum hourly pay in accordance with the Act was a direct violation of the Act, specifically 29 U.S.C. § 206.

55. Defendants' failure to pay proper minimum wages for each hour worked was willful within the meaning of 29 U.S.C. § 255.

56. Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW § 652(1)
## <u>FAILURE TO PAY MINIMUM WAGE</u>

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

58. Plaintiff was an employee of Defendants within the meaning of New York Labor Law.

59. Defendants failed to pay Plaintiff the required minimum hourly wage rate for one hour of work during certain periods of her employment.

60. Defendants violated Plaintiff's right to minimum wage pay under § 652(1); New York Labor Law, Article 19.

61. Defendants also violated New York's Minimum Wage Order of 12 NYCRR Part No. 142.

62. On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

63. Defendants' actions were willful.

64. Defendants' failure to comply with the New York State Labor Law and New York's Minimum Wage Order caused Plaintiff to suffer loss of wages.

## AS A THIRD CAUSE OF ACTION
## <u>UNLAWFUL DEDUCTIONS FROM WAGES</u>

65. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

66. Defendants have made unlawful deductions from the wages of Plaintiff including, but not limited to, deductions for house fees, house mom fees, dee-day fees, hairdresser fees, club scrip cash-out fees, and host fees.

67. The deductions made from the wages of Plaintiff have not been authorized or required by

11

law.

68. The deductions made from the wages of Plaintiff have not been expressly authorized in writing by Plaintiff, and have not been for the benefit of Plaintiff.

69. Through their knowing and/or intentional efforts to permit unauthorized deductions from the wages of Plaintiff, Defendants have violated NYLL, Article 6, ¶ 193, *et seq.*, and the supporting New York State Department of Labor Regulations.

70. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

## AS A FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE WAGE THEFT PREVENTION ACT

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

72. Defendants failed to give Plaintiff written notice regarding: her regular rate of pay, overtime rate of pay, how she was to be paid, her "regular payday," the official name of the employer and any other names used for business, the address and phone number of the employer's main office or principal location, nor, allowances taken as part of the minimum wage, in violation of NYLL § 195.

73. As this occurred for the entirety of Plaintiff's employment, she is entitled to the maximum amount available under the law.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Fair Labor Standards Act and the New York State Labor Law by failing to pay Plaintiff earned wages;

B. Declaring that Defendants engaged in unlawful employment practices prohibited by the New York State Labor Law by making unlawful deductions;

C. Declaring that Defendants engaged in unlawful employment practices prohibited by the New York State Labor Law by failing to give proper notice pursuant to the Wage Theft Prevention Act.

D. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful employment practices and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff liquidated damages as a result of Defendants' willful failure to pay wages and for making unlawful deductions;

G. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
September 21, 2017

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _/s/ Casey Wolnowski_

Casey Wolnowski, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
Ph: (212) 248-7431
Email: cwolnowski@tpglaws.com